Mr. Chief Justice, and may it please the Court, the Tenth Circuit, after finding that Mr. Wood's petition presented two substantial constitutional claims, denied him habeas relief solely on the ground that his petition was untimely. It did this even though the State had done three things that should have precluded this result. First, the State deliberately relinquished a known statute of limitations defense. Second, in doing so, the State acted strategically, not inadvertently. And third, in doing so, the State induced the district court to expend substantial resources in deciding claims of exhaustion, in deciding claims on the merits. Sotomayor's counsel, we asked for two questions presented. The first was, do court of appeals have the power, sus ponte, to raise issues? And in your reply brief, you appear to say, yes, they do in some circumstances. So are you conceding that that power exists or that there's no power whatsoever? I'm proposing a clear line that would divide situations in which the court of appeals would have power and those in which it absolutely has no power. Is that a question of power or a question of exercise of discretion? I would say it's a question of power, and this is why. I'm saying it's sort of strange. You both rely on a factual situation. Either you can do something or you can't. That's power. If you can do it sometimes, that's still power, and then the question is, did you do it when you couldn't do it? Well, what I'm proposing is that there are situations when it is never a proper exercise of the appellate court's jurisdiction to consider sus ponte a statute of limitations defense, even in the habeas context. And that's what we said in Day, isn't it? Correct. In Day, the court said that courts, courts, it wasn't directed at appellate courts, but no court would be free to disregard a deliberate waiver of a statute of limitations. So all this fight is about is whether there was a deliberate waiver or not? Well, that's. As opposed to power. That's our primary, our primary argument, is that there was a deliberate waiver in this case, and given what this Court said in Day, the case could be resolved on that ground. Well, it is what the swords are crossed over here, because you say this is a deliberate waiver, and the government says, no, it's a forfeiture. And forfeiture, if it's forfeiture, then the court of appeals has discretion to take it up. If it's a waiver, then Day makes clear. So it's a question of which box this case fits into. Is it forfeiture or is it waiver? And your position is it's waiver. That's correct. And my position also is that there is an overlap between those boxes, and that when the statute of limitations defense is forfeited in the sense of not being preserved in a timely manner, because of a deliberate choice, I mean, and in this instance Are there a lot of cases raising the, you know, the ambiguity that exists in this case? I mean, if you tell me that's all this case is about, I think we ought to dismiss it, dismiss it as improvidently granted. I don't sit here to decide whether when the government says, you know, we do not concede it, but we're not arguing it, or whatever the language was. We don't sit to decide factual questions like that that come up in a particular case. I thought we took this case to decide the more significant issue on which there is a division in the lower courts as to whether there is, as you say, power of the court to disregard the fact that a statute of limitations defense has not been rendered. I mean, we all agree it wasn't raised. We all agree it wasn't raised. Now, whether it was forfeited or not is another question. If that's all you want us to decide, I don't want to decide that. Well, I clearly want a decision that would favor my client. This Court granted cert on two issues, and certainly this case presents the first issue, which is whether a court of appeals, once the State has had an opportunity to raise the statute of limitations defense and chooses not to, whether the court  Sotomayor, only the opportunity or when it acknowledges. In Day, we faulted the district court for not telling the State, essentially, which would be not telling the State that it had a potential statute of limitations defense. Is it your position that if the State had just been silent about the statute of limitations defense and not raised it, that the court of appeals wouldn't have power? Or is it your position that because they knew they had the defense and didn't raise it, that the court of appeals didn't have power to suspente raise it? Well, both the district court ordered the State to announce that. Sotomayor, you're not answering my question. I'm sorry. Does the court of appeals have the power to suspente raise it if the State nor the court or the State address the issue? Probably, yes. Probably, yes. So it doesn't have the power if the issue's been raised? Is that your position? That's correct. If the stage of the proceedings is after it was in Day, because in Day when the issue arose under the rules of civil procedure and under traditional treatment of statute of limitations defense, there was still time for the State to announce. There was still time for the State to change or to raise the statute of limitations defense here. It sounds to me that what you're arguing is that the court of appeals abused its discretion in viewing this as a plain forfeiture, which you've just said would permit the court of appeals to raise the issue suspente instead of a deliberate waiver. Is that what it comes down to? Or a purposeful forfeiture. I mean, there are court of appeals that might do that. They put it in the wrong box. They abused their discretion by putting it in the wrong box. They didn't put it in the forfeiture box. They put it in the deliberate waiver box. Well, the way the court of appeals handled it will create problems if it's approved by this Court. But this is what troubles me about your argument that the court of appeals abused its discretion. Is it correct that you did not raise the issue of the court of appeals' lack of authority to raise this suspente until rehearing? What happened, Your Honor, is that we were appointed at the certificate of appealability stage and we were ordered to brief timeliness. Perhaps I took the order to literally, I brief timeliness, but I also set out exactly what happened, which is in the briefs, and which sets forth the State's position. The court itself raised Day and raised its limited authority under Day to consider a statute of limitations defense. They found rather than a deliberate waiver, which I believe the record supports, that the State's comments were cryptic. And I will stress that. But you're arguing that the court of appeals abused its discretion by failing to rule in your favor on an argument that you didn't make. No. I — the court was aware of Day, and the court analyzed what it was doing under Day, and it determined whether there was a deliberate waiver. Once the court found there was a deliberate waiver, I definitely challenged that finding. I — there's a very strong argument, not included within the certificate — the questions presented, that this is a totally timely petition. And it's only a — it's a very difficult argument, which is one of the reasons why it shows how much the State's actions in the district court were strategic. But you had two opportunities at least to make the argument based on the original post-conviction motion, the 1995 post-conviction motion. You did not raise that. You were silent twice. Silent on the impact of the 19 — we were not silent on the impact of the 1995 motion. We've always said, and in fact the State has never disputed, that that was a properly filed motion. And the only issue was whether it was told — whether it told the statute of limitations period until 2004. And the State realized that that issue, if they were to prevail on the timeliness issue, it was a very, very difficult issue. Well, then I'm confused, because I thought that there was — it was conceded that the question was asked, did you file another post-conviction motion? Answer, no. I understand your question now. When Mr. Wood was pro se, he filled out pro se motions. And in those pro se motions, he did say that there were — and I'm talking about the 2004 motion. He said there was no prior post-conviction motion. And I believe he was confused, because if you look at the forms, both the Federal forms and the State forms, that show what a defendant should check, it makes it sound like a motion has to have been ruled on. And Mr. Wood was pro se and simply confused. And no one else was confused once the State entered their appearance. They knew that the 1995 motion was still pending. All they had to do was sit at a computer and bring up the minute orders from the State, and they could learn that. So the courts, in making their rulings, always from the time and, you know, one of the reasons why what happened was so strategic and so clear is that the district court had initially dismissed Mr. Wood's petition as untimely. Ms. Lord, can I ask you about the first question presented? As I understand the opposing argument, it goes sort of like this. It says, in Dey, we said it's fine to do this in the district court. Even if the party hasn't raised it, the court can raise it on this exact issue. In Granberry, we said with respect to a different issue, that the appellate court could raise it. And in Dey, we said that those two issues were really the same. So that seems sort of like a logical argument that just gets you to a place where you lose on the first question, unless perhaps there's a difference between a court raising a question sua sponte and a court allowing a party to raise it later than the party ought to have raised it. Are you relying on that distinction, or are you questioning the logic of the basic argument that Granberry and Dey decided this? Both. And with respect to the first argument about there being a difference between a party presenting an issue and a court sua sponte raising the issue, there is a difference. And the courts, the circuit courts, do not always make that distinction and do not always focus on that. For example, in Granberry, it actually was a case where the party presented, the State presented on appeal, the exhaustion issue. And the court agreed to hear it, even though the State hadn't raised it below. Here, you know, at least five times in our joint appendix, you will see the court saying that they can't act as an advocate for the Petitioner. And in fact, when the Petitioner, Mr. Wood, tried to raise an exhaustion issue again, the Tenth Circuit in its Certificate of Appealability said, he's bound by his And in the same breath, the court of appeals resurrected the at least concededly forfeited statute of limitations defense on behalf of the State. But I'd also like to add to that. Sotomayor, you seem to be arguing that because the court of appeals raised it before the party did, that that's worse than a party raising it first. Is that your position, that the court of appeals has more power after a party who's forfeited below or waived below now tries to come up on appeal and assert a defense that they didn't assert below? Now the court of appeals has more power? It raises different concerns. My concern is not the relative power. It's that when a court is raising something sua sponte, it defeats the party presentation principle. That's one concern. When the court is, when the party raises it after having forfeited, everyone concedes here that they wouldn't be allowed to. So in essence, what happens is the court is acting as a super advocate for the party. Sotomayor, those arguments were rejected in Cranberry and Day. Why should they win now? Well, and that was, I was going to, I had a second part of my answer to Justice Kagan, which is there's something really different going on in Cranberry and in Day. And you can't add the two and come up with a neat package such as what's suggested by the State. And in Cranberry, of course, as the Court all knows, the Court was dealing with exhaustion. And it was dealing with exhaustion, which goes to the heart of habeas and comedy and all those concerns, at a time when dismissing a case to exhaust claims, all that would do is delay Federal relief. It wouldn't eliminate Federal relief. And this Court, in Rines v. Weber, recognizes that when AEDPA was passed, it transformed the landscape and it really made some changes. And whether the notion in Cranberry that exhaustion can be raised for the first time on appeal transfers to the statute of limitations, I think there's real doubt about that, and I think that goes to an important question and the question that the Court granted servant. But didn't Day say that those two issues were functionally identical for this purpose? Not for this purpose. And by this purpose, I mean the court of appeals' authority to raise sua sponte the defense. In Day, this Court, there were two prongs to Day. In the context of Day, which was, you know, where the State had filed the Rule 5 response and patently, erroneously calculated the limitations period, and the Court noticed it, and there's no law that required, as this Court held, the court to muzzle itself and not mention, you've miscalculated these days, we're in a totally different situation. And the rules of civil procedure allowed what happened in Day. They don't allow what happened in our case. And the Court said that the court had not raised it and there's no law that required that in this process. Well, I'm referring to Civil Rule of Procedure 8b and 12. Well, they refer to what happens in the district court, and Day dealt with that. Now you're in the court of appeals. What rule is there that addresses the situation in the court of appeals? Well, there's the traditional rule that if you don't raise it, you lose it when we're talking about a statute of limitations defense. And it's really key here, because when AEDPA engrafted this 1-year statute of limitations into the habeas proceedings, it knew how 1-year statute of limitations were treated. And yes, in Day, quite correctly, the court held that in that context, you're going to treat those defenses the same, especially with respect to Rule 4, which would allow a court to dismiss a petition just on its face. Alito You made an argument in your brief that I found it a little difficult to follow, so maybe you can explain it. You seem to suggest that the State's position on timeliness in the district court somehow induced your client to dismiss the claims that were arguably not exhausted. And I found it difficult to understand why the — why your client's strategy as to whether he wanted to dismiss those claims or not would be affected by the State's position on timeliness. Well, if the State had challenged timeliness at the stage that AEDPA contemplates it would, it would have created a real complicated issue on abandonment. And I think the brief suggests just how complicated that is under Colorado law. And if that had happened, the court very well could have — district court could have appointed counsel for Mr. Wood. I mean, if there had been an evidentiary hearing, if, as the Tenth Circuit found, the issue was so complex that counsel was necessary. So once you had counsel, in the State's reply or in its answer, they indicated that several of Mr. Wood's claims were not exhausted. And some of those claims were in that 1995 motion that was pending. With counsel, there could have been a request for a stay in abbey. There could have been so much that was done. Mr. — but because the State chose to simplify the proceedings, that's what they did, and it was not inadvertent, it wasn't a mistake. They chose to make it simple and to focus on exhaustion, so they got four claims dismissed on exhaustion grounds, and then they dealt with the other two claims on the merits. They also had a procedural default issue, which was totally unconstitutional. They were relying on a procedural default that didn't exist at the time you had to raise it. But that simplified the proceedings, made it more a question of law. Mr. — Sotomayor, what's wrong with that? Why should we be penalizing the State for trying to simplify an action and make it move more expeditiously? Absolutely we should not, but we also should hold them to that strategic choice, which is what Day says you do. And we have to hold them to that choice because there were consequences and there were changes of positions. And they got the benefit of going forward and just looking at exhaustion. They eliminated the risk of an evidentiary hearing. They eliminated the risk of a lawyer. They induced Mr. — they induced Mr. Wood to dismiss four claims because — oh, sorry. I'm sorry. No, keep going with your question. No, because he was assured that he could go forward on two substantial constitutional claims without worrying about time bar, because the State said that. They said twice, we are not challenging, we will not challenge timeliness. That's what I don't understand. Why — you have two situations. One situation, the State's raising timeliness. So he says, okay, they're raising timeliness, I'm not going to dismiss my — the claims that they say are not exhausted. The other situation, they don't say anything about timeliness, and he says, now I'm going to dismiss the claims that are — that they say are unexhausted. I don't understand the connection. Well, the connection is the State guaranteed that they would not challenge timeliness. And that allowed Mr. Wood to go forward on two constitutional claims without ever having to worry that they would be subject to time bar. And when the Court of Appeals — I understand why that's a benefit to him, but what is the connection between that and the dismissal of the unexhausted claims? Oh, because if they had — if they had challenged timeliness, they would have raised this very complicated issue, because the only way they can win on timeliness is to win on this newfangled notion of abandonment under Colorado law, which under Colorado law requires a hearing and requires factual development. And once they pursued in the district court that claim of abandonment, it was very likely that a lawyer would be appointed. That lawyer could see that there were claims still pending in the 1995 motion and could possibly have sought a stay and obey, could have gone and tried to exhaust those claims, serious constitutional claims that were in the 1995 motion. And maybe a better way of putting it is, if they had raised timeliness in the district court, abandonment would have been front and center, and even though the Court of Appeals ultimately resolved this issue without an evidentiary hearing, that would have been an abusive discretion itself, too. It was totally contrary to Colorado law analyzing that issue. It is no small thing that the position that they took in the district court allowed Mr. Wood to go forward on two claims, two constitutional claims that are substantial, that the Court has granted a certificate of appealability on. This case is so unlike Day in the sense, if an appellate court can raise sua sponte, the statute of limitations, in a case like this, it can raise it in any case. It invites the State to take a position in the district court which would be totally contrary to AEDPA's desire for streamlined proceedings. It would have been a different case. Scalia. Mr. Lord, an amicus brief filed on behalf of 15 States contends that the civil, the rules of civil procedure are not what should be consulted here, because they govern only to the extent that they are not inconsistent with habeas rules, and asserts that the habeas rules should rather apply and that they cut against your case. Do you have a response to that? Was it in your reply brief? Or? It may be. I believe in some of the briefs. What I've said is there is no inconsistency between Rule 5's requirement that the defense be set forth and the traditional recognition that statute of limitations is lost if not raised. And I cited the Court to Jones v. Bach, which stresses that for mere policy reasons we shouldn't deviate from the rules that would otherwise apply. And I think that's true. Isn't the screening function that a district court performs in a habeas case inconsistent with the traditional rule about raising affirmative defenses? Well, that's the district court, and that's one of the key differences between the district court and the appellate court. The appellate court can issue a certificate of appealability. The district court has that prescreening function, which is just like the prescreening function in the PLRA, where this Court looked at a circuit's attempt to create rules that would address policy concerns and deviated and put an enhanced pleading requirement on prisoners, and said, I believe, unanimously, unanimously, that that shouldn't be done. There's a real virtue in having a predictable rule. There's a real virtue in letting the States or letting the States know in the context of this Court's Federal timing rules that they have to raise it, the statute of limitations, when they are ordered to and when Rule 5 requires them to. You should not adopt the State's position when it will just invite the sort of sandbagging that this Court has taken care to avoid. You don't want straddling by the State on something as important to judicial efficiency as asserting the statute of limitations in a timely manner. I will reserve the rest of my time. Thank you, counsel. Mr. Domenico. Mr. Chief Justice, and may it please the Court, in contrast to the new and fairly complicated set of doctrines my friend asked the Court to adopt today, this Court can resolve this case by applying two straightforward longstanding rules. First, in Granberry v. Greer, the Court recognized that courts are not bound by a State's failure to properly argue and preserve a procedural bar to a habeas claim. And second, to the extent there is an exception to that rule for deliberate waivers, the Court should apply the common rule that a waiver must be unequivocal. By applying the rule, please. Breyer, what's the case that supports you the most on that? On the second question? Well, that's a common rule from statutory rights such as in a law. Just give me a citation. College Savings Bank is one, probably the first. It has to be what, what's the word, unequivocal? Unequivocal is a common for waiver of everything. I'll look at the statute. Now, I did look at Black's Law Dictionary. And Black's Law Dictionary, looking up forfeiture and waiver, it seems like you lose. My analysis would be this. Forfeiture is the loss of a right, that's what's at issue, because of a crime. That doesn't apply. Because of a breach of obligation, that doesn't apply. Neglect of duty. Now, that does because you didn't follow the answer, okay? So it's forfeited. Now you look over to waiver, and as you say, it says voluntary relinquishment of a legal right. Okay, what's the legal right? The legal right is to get the case dismissed. So I'm the judge. I say, State, do you want to get the case dismissed? I just gave your answer. Okay. I say, you voluntarily relinquished your legal right. Your legal right was to get the case dismissed, and you relinquished it. You didn't assert it. That would be the difference. And she's saying that. She's saying that makes a lot of sense. When you read Day, they're worried about the State doing something inadvertently, making a mistake. So what the judge says is, State, you know you have a pretty good claim here on statute of limitations, but you didn't assert it. So I'm going to give you the right to assert it. Go ahead, assert it, even though it's late. You overcome the forfeiture. Now you say, I assert it, Your Honor. Okay, you haven't waived it. Now you say, I don't really care. Well. Breyer, what the State was doing here was not strategically trying to do. Oh, no, I assume they didn't do anything mean, unstrategic, it wasn't a trick. It was just, what is it that they did? And what they did is they were given the opportunity to overcome the forfeiture, to assert the statute of limitations claim, and they didn't do it. They didn't want to do it. I don't know why they didn't want to do it, because it was a lot of trouble, raised other issues, da, da, da. But that's their business. The fact is, they didn't do it. Justice Breyer, the Court has been clear that a State's failure, normally, that's true, the normal rule under the rules of civil procedure is a forfeiture of that sort. Failure to raise an argument is deemed essentially to be a waiver under those definitions. But this wasn't failure to raise an argument. This was representing to the Court, we will not challenge timeliness. That was a representation made to the Court. That was not negligent oversight in not raising the question. It was an affirmative representation to the Court that, although we might have done it, we will not challenge timeliness. Justice Ginsburg, there was an element of mistake, of negligence, as you say, but it also was. Didn't the State adhere to that? That's right, Justice Scalia. It kept its word, didn't it? What the State was trying to do, I think, is slightly different than would make sense in any other context. Because of the special procedures we're under in a habeas, a preanswer response, what we were telling the Court was, we will not assert this argument unless there's further inquiry from the Court. Now, normally in court, there would be no further inquiry. Wait, wait, wait, before you say further, I want to be very precise about the distinction. You have to put it in your answer. You didn't. Okay? So that's a forfeiture. So now the judge says, you didn't put it in your answer, but I'll raise it. So now you have the right to have the case dismissed for statute of limitations. Do you want to exercise that right? The answer to that question was you didn't. You said you didn't care. That's the question. I don't think that's quite an accurate characterization of what's going on. Oh, I will go. One, do the characterization, but please don't forget my first question, because so far I'm just stuck on Black's Law Dictionary. And I would like you to have better authorities for your, you know, this brief. Well, the Black's Law Dictionary, of course, applies the usual rule. This Court has made clear in Granberry v. Day that the usual rule that a forfeiture of a legal right means that it's not to be brought up again, that it doesn't apply to bind the court's hands. Granberry v. Day make that quite clear. What happened in Granberry would have been a forfeiture. But, Mr. Domenico, you're saying something considerably more. You're saying that when a State gets up after inquiry by the district court, when a State gets up and says, we do not want to press this argument. Now, we're not saying the argument is wrong, because after all, we're a repeat player, and we're going to hear that argument again. And we're not saying that argument is wrong. But in this case, we do not want to press that argument. That's unequivocal to me. It's unequivocal that we were not going to press it again, though I think the implication — there would have been no reason to have raised it initially, there would have been no reason to include this caveat about refusing to concede if that was all we were trying to say. There are easy ways for a State to take the issue off the table. Sotomayor, can I ask you, do you mean to tell me that, using your own words in your brief, that a waiver is the intentional abandonment of a known right? I think you're equating intentional abandonment of a known right to be, I have to admit I could win, and I'm giving up that argument. Is that what you're saying, intent deliberate? Well, you have to know what it is you're giving up. Well, you knew you had a defense under the statute of limitations. Sure. You thought because you conceded that you weren't conceding that it was untimely. So you were conceding you thought it was untimely. And despite admitting that you knew you had a defense, that you knew it could win, you were choosing not to assert it. So tell me why that's not either an intentional waiver, a deliberate waiver, or an abandonment of a known right. The what we were abandoning, to the extent we were abandoning anything, it was our ability to force the court to address the issue. In any other context, I agree that maybe there may be a distinction with no difference. But in this case, because there is a screen. You were protecting the court's rights to do whatever it wanted? There was a screen. There is a screening function. We were raising the issue precisely to put it on the court's table for consideration. So why isn't it an abuse of discretion for an appellate court when there's been an intentional abandonment of a known right to sus sponte, raise that defense? Well, we did not take off the table the court's right to consider the issue. You say you didn't abandon the right. Isn't that your position? You did not abandon it. We did not abandon the issue. You just gave up the opportunity to raise it yourself. I think it's a confusion between what we're calling a right or the issue or the defense. We, that's right, gave up our right in the district court unless asked to argue the issue. Alito, let me give you this example of a regular civil case. There are two defendants and the same claim against two defendants. One defendant files an answer and raises the statute of limitations defense. The other one doesn't. The judge asks the second defendant, are you going to amend your complaint? And the defendant says no. Now, is that a waiver or is that a forfeiture? Well, I think in your typical case, it doesn't matter because forfeitures generally are deemed to be waivers, I think, in your typical case. That's not true under Granberry v. Day. The court has made clear that a forfeiture is different than a deliberate waiver. Under the terminology that we're using, wouldn't that be a forfeiture? I think it's better understood as a forfeiture. Simply, you're not going to argue the issue, but the issue doesn't necessarily need to be taken up. Breyer. That's why your colleague on the other side, why she made this point the way she made it. I think there's no disagreement, at least as far as I hear Justice Scalia. Look, he did abandon his right, the State, to push the matter. That's abandonment. He didn't abandon the right to get the case dismissed if the judge pursues it. So your colleague says, or as she says, a court of appeals does have the power on its own to overcome a forfeiture, that's Day. But they don't have the power on its own to overcome the waiver, and that's what they're doing. They don't have the power, in other words, to decide it themselves. They only have the power to overcome a forfeiture. Well, if the Court looks at the where this deliberate waiver exception to the Granberry and Day rule comes from, it comes from Day. And the concern there is with a court overriding a State's decision to waive, to take the issue off the table. There are examples of States doing that, and when they do it, they are clear about it, and you can tell when it would be overridden. But the consequence of that was the district court then had to deal with the case on the merits, had to take up the two exhaustive claims and rule on them. After having told the district court, you don't need to, we're not raising the statute of limitations, we will not challenge timeliness. So you put the district court to the necessity of deciding the case on the merits. It does. It takes up the two unexhausted claims and deals with them on the merits. In Day, absolutely nothing transpired between the State saying the claim was timely and the magistrate's detection of the computation error. The district court wasn't put to what was unnecessary work. It was the consequence of saying we won't challenge it, forced the district judge to deal with it on the merits. In Day, the counsel didn't bring up the question because counsel thought that it was timely. He had miscalculated, made a mathematical error. And the judge then said, you know, I see the number of days that's required by statute they have run. And as Day pointed out, at that point the trial judge could have said, now, you know, wouldn't you like to amend your complaint and put in an H.C. defense? So the two cases, the two situations are so different. The district judge wasn't — nobody was made to do anything extra. But in here, because the attorney said we won't challenge it, the district judge had to deal with the case on the merits. That's right, Justice Ginsburg. We failed in our duty and our obligation to protect the district court from having to engage in what, had we properly argued this, would have been unnecessary work. Those are sunk costs, aren't they, Mr. Domenico? They are, Justice Scalia. It's water over the dam. And the issue is whether the court of appeals will then have to repeat the district court's excursus into the merits. Right? I think that's exactly right. We have already spent that time. The question now is, if Mr. Wood prevails now, the court of appeals will have to proceed to resolving the case on the merits. Instead, in this case, they applied the very common principle that a court of appeals will affirm for any basis supported by the record. In order precisely to avoid — that happens fairly often. They avoid having to address a constitutional problem. They save having to engage in those efforts again. And that's a matter of discretion with the court of appeals? Absolutely. We recognize that this is in that middle ground where the court of appeals was certainly under no obligation to do this. Had the court of appeals refused to do it, we wouldn't be here demanding that they be forced to consider this issue. And the court of appeals could have gotten mad at the fact that the district court was compelled to go through the merits, right? Absolutely. And for that reason, could have denied it. But it didn't get mad, I guess. I don't know why. Well, it didn't get mad, partly, I think, perhaps because Mr. Wood never argued that the issue was forfeited or waived at all until after — after the court of appeals had already resolved. But why do you say that the position that the State took in the district court prevented the district court from considering the timeliness issue? If it wasn't a deliberate waiver, then the district court under Day wasn't prohibited from deciding the case on timeliness. Absolutely, I do not think that the district court was prohibited from considering it. The only reason for us to have raised this sort of skeletal outline of the argument was precisely so the court of appeals would have the opportunity to consider it. Remember, this was raised initially in the pre-answer response stage, where the — which is specifically part of the district court's preliminary consideration of the issue. So it was certainly ex ante quite possible that the response of the district court would not be to simply ignore the issue as it did, but to either ask for additional briefing, as happens with some regularity, to issue a show cause order as it had already done, or perhaps to dismiss the case again as it had already done so. So the issue was not off the table. The district court very much could have addressed the question. Kagan, Mr. Domenico, do I understand your argument correctly to think that if you had not said, or if the lawyer for the State had not said, we are not conceding, if all that the lawyer for the State had said is, we are not challenging this, Your Honor, would that count as a deliberate waiver under Day? I think that's a harder case. The lead-up to that, I think, undermines the — at least the unequivocal nature of — of that statement, because there would have been no reason to have laid out the potential argument if what we were really trying to do was waive the — waive the entire issue as Day uses that — that language. If that's what we were trying to do, there would have been no reason to do that, either. Sotomayor, I'm sorry, the new case law is what I said. When you say, I won't raise this defense, I waive it, everything you said, except saying, I don't admit it, today, before a circuit court abuses its discretion, you also have to say, I am waiving the right of the court of appeals to raise this suspente. That's — that's — you want that to be what you need to do for us to find a waiver. I don't think you need to say that. I don't think there necessarily need to be any magic words at all, but it needs to be unequivocal and clear, not ambiguous language, that we're going to spend an hour here today trying to debate what it was that we meant. That's the only rule we're asking for today. And the contrary rule really provides some perverse incentives to States. I mean, here the State was trying to be candid with the court. It discovered this 1995 motion on its own. Mr. Wood had never mentioned it in his filings. He had already briefed the timeliness issue twice in the district court without mentioning it, let alone raising it in any of his petitions. The State found this and tried to be candid that we weren't entirely clear about how the argument played out. The alternative is that States will be forced into something more of a scorched earth, throw everything at the court, see what sticks. And that's not in anybody's interest, let alone the Federal court's or habeas Petitioner's. Ginsburg. There is something about the principle of party presentation, the party raises the issue, the court of appeals is the court of review, not first view. Here, in Day, the lawyer did not know that the court of appeals was going to be a court of review. He had a statute of limitations defense that did not know because he had miscalculated the time. Here the State knew very well that it did have a statute of limitations argument, but it says we are not challenging it. And then the ordinary thing is that a court of appeals reviews decisions of the district court, doesn't decide questions in the first instance, but here you are saying that the attorney can tell the district judge, don't decide this, go on to the merits. Then the court of appeals, which is supposed to be reviewing what the district court does, instead deals with that question in the first instance. That seems like an odd inversion of the role of the district court and the court of appeals. Justice Ginsburg, again, I don't think it's quite accurate to say that we told the district court not to address the issue. We told the district court there was an issue that we were going to refrain from presenting our full argument on it. Ginsburg. He didn't say we were going to refrain from it. You said, district judge, Your Honor, we will not challenge timeliness. Didn't have any qualifications. Well, I do think we qualified it. The only reason to include the language about not conceding was to qualify that. The only reason to lay out the argument was to make sure that the court was able to consider it in its screening procedures. And it's true. But isn't the concession language really going to a different point? The concession language is going to the point of why it is that you're not raising it, that you're not challenging it. I don't think it is, if I may, Mr. Chief Justice, I don't think that there is any reason for us to have been concerned about how, if we had simply stated we are not challenging it, there would have been no concern about this affecting any other case whatsoever. The only case in which to be concerned that what we said would be misconstrued as a waiver was this case. Thank you, counsel. We will hear from Ms. Sherry first. Oh, I'm sorry. Ms. Sherry. Mr. Chief Justice, and may it please the Court, this Court's decisions in Granberry and Day answer the first question presented. I think Petitioner no longer can test that, and the Court can simply decide the first question presented on that basis and reaffirm what it said in Granberry. Ms. Sherry, there is one difference. If you put Granberry and Day together, it gets you most of the way there. The one difference is that here there was a sua sponte decision by the Court, whereas in even the combination of Granberry and Day, it was a party that raised it, although the party raised it late. So why should that difference not matter? If you think that party presentation has some consequence in this area, you might think that that difference does matter, that once you get to the court of appeals and even then the party doesn't raise it, sort of enough is enough. A couple of responses to that. Number one, I think it's significant that Day itself was a case in which the Court raised it on its own. But at the trial court level. At the trial level. Of course, the habeas court has a significant screening function. No, that's certainly true. I think the procedural default cases are another good example. This Court in Day cited a number of them, a number of them of which were cases in which the court of appeals was raising the issue sua sponte. On page 12 of our brief, we cite a number of procedural default cases. A lot of them come up in the sua sponte context. And the courts of appeals have not made a distinction between the two. I think they certainly implicate different concerns. For example, to the extent this Court has been worried about sandbagging  raising it on its own motion, as opposed to the party belatedly raising the issue on appeal. So I do think if you look at Granberry, you look at Day, you look at Kaspari, you look at Shero, and you look at the procedural default cases, I think that really does resolve the first question presented. And again, I don't think Petitioner really argues otherwise. Alito, I may have forgotten the procedural complications of this case. But here, did the State have any opportunity before the court of appeals to raise the timeliness issue prior to the time when the court of appeals issued its certificate of appealability? And if the court of appeals had not issued a certificate of appealability on the issue of timeliness, would the issue have come up at all? The State did have an opportunity in the court of appeals because after the application for a certificate of appealability was filed, the court did order the State to file a response, and the State didn't argue timeliness in that response. But when the court of appeals did ask for briefing on this issue in the certificate of appealability process, the State, of course, did have an opportunity to respond there, and it did argue that the petition was untimely, and it strongly argued that. And so I guess turning to the second question presented of deliberate waiver, I don't think there has been a deliberate waiver in the way that Day spoke about that term here for two primary reasons. Number one, when Day spoke of deliberate waiver, it spoke of overriding a State's deliberate waiver. And I think if you look when the court of appeals decided the timeliness question, there is no way to look at that as the State, as a court, rather, actually overriding the State's deliberate waiver. At that point, the State had argued that the petition was untimely. A petitioner never argued that the court shouldn't decide the issue, never argued that that the State had waived that issue below. And I think at that time, it's really difficult to characterize that as overriding the State's deliberate waiver. The other point I would make is in the district court. Ginsburg-Miller The difference was that in Day, counsel didn't know that he had a statute of limitations defense. So what the court suggested it, in this case, the defendant – I mean, the attorney knew, the State's attorney knew they had a statute of limitations defense, and not nonetheless told the court, we won't challenge timeliness. It's a big difference between the factual background of Day, where the lawyer didn't know there was a statute of limitations defense, and this one, where the lawyer knew very well there was, and decided to tell the district court not to deal with that issue. I think that certainly is true, but I think it's important in deciding whether or not this should be treated as a deliberate waiver to look at what the consequences of treating it as such would be. The consequences of treating it as a deliberate waiver under the language of Day is that the court's hands would be bound. The court would be unable to decide the timeliness question. And it's not just the court of appeals, it's the district court as well. So if this were a clear deliberate waiver in district court when the State filed its pre-answer response, the district court would have been without any authority to do that. Breyer, why is that a bad result? Imagine the facts are these. The State forgets to waive the issue, to raise the issue in the defense. All right, forget. Judge, State, you haven't raised a statute of limitations. State, one possible answer. Thank you, Your Honor. Overlook our forfeiture, we want to raise it. Number two, they say, we don't care. Number three, we don't want to, okay? Now, in two and three, you can say this. You can say the reason that we depart from the normal rule that you have to actually assert it in your defense is we're trying to protect the State because of habeas. So we protect the State, at least by giving them a chance to make the argument when they forget or some other reason. Now we gave them the chance. Now they say, who cares? All right, if that's their attitude, why is it the habeas court's business to protect the State from themselves? Because it's not just about the State, because it's because of the institutional interests that are at stake, and that's why Granberry and Sciarro and Kaspari and Day allowed there to be consideration of these issues despite forfeiture. It's because of the institutional interests of forfeiture. Sotomayor, despite forfeiture. And that's the very question here, whether it should be treated like forfeiture or whether it should be treated like waiver. And the reason why I think it would be a bad result to treat it as waiver here and why it would be bad to have bound the district court's hands in this case, if you look at what happened here, the district court on its own motion initially dismissed this as untimely. It came back and it went to the State and said, you know, I need more information, and the State provided that additional information. It would be a somewhat odd system for when the district court now had this information in front of it, now knew about the 1995 motion, for it not to have been able to do anything further with respect to timeliness on that point. The fact that the State, for whatever reason, decided to press other issues shouldn't bind the district court's hands, except in the rarest of circumstances. Ginsburg-Millett, except we have a system where the court doesn't raise issue on its own. The ordinary rule is the party presents it, and when the party says to the court, we will not challenge timeliness, it seems to me that's quite a different thing from just having an answer that doesn't raise the defense. It's affirmatively representing to the court that we are not making this an issue. And to be clear, I think that's certainly a factor that the courts can and do consider in deciding whether to exercise their discretion to consider a timeliness issue. The question here is whether or not the court should lose any discretion to consider that issue. Ginsburg-Millett, but they did say that if a party knowingly waives a limitation of defense, then no court can bring it up. The party has made the choice. Millett, that's what this Court said in Day, and I guess the question is how strictly that should be construed. And our position would be that it should be strictly construed because of the consequences of that waiver. And again, I think it's significant that the Court in Day did talk about overriding a State's deliberate waiver in the dissent. Justice Scalia, you mentioned the example of a court amending a party's pleading over that party's objections. And I think that really is the narrow circumstance in which the waiver rule should operate. It's not that the State's behavior is irrelevant to the question before the court as to whether the court should exercise its discretion. It's actually quite relevant, and it's something that courts of appeals can and do look at. The question is whether or not the courts lack any authority to consider a limitations defense or other procedural defense. Roberts, so you're saying that if the court says, you know, you have a good State limitations defense, you would clearly win on that, but I'm going to ignore it, even  I'm sorry, Your Honor. Would it be an abusive discretion for the court not to accept a valid, evident statute of limitations defense on the ground that the State didn't raise it? I think under Day, the question is whether it's a deliberate waiver. And I think under Day, the court said quite plainly that it would be an abusive discretion in those circumstances. And I think there are a limited number of circumstances where that makes sense, and I think the court has seen examples of that recently this term, for example. The court denied certain cases, Buck v. Thaler, earlier this term, where a predecessor case that is an example of the State expressly waiving a procedural default defense because it wanted the court to reach the merits. In that case, the State said quite plainly, in the predecessor case, I should say, the State said quite plainly, because the use of race in the punishment phase seriously undermined the fairness and integrity of the judicial process, the director expressly waives any procedural bar with respect to that claim. Now, that is the quintessential deliberate waiver, and it took it off the table, unlike what happened in this case. Roberts. Thank you, counsel. Ms. Lord, you have three minutes remaining. The problems with the rulings urged by the amicus and by the State are severalfold. One, it's not contemplated at all by AEDPA that the one-year Federal timing statute of limitations would be subject to such a wide latitude in the court of appeals to resurrect defenses. If the State knows that it has a potential statute of limitations defense and says nothing, is that a forfeiture or a waiver? It would be a violation of Rule 5, which requires them to assert a time bar if they are required to file a response. In our case, it also would have been a violation of the court's order. So simply saying nothing can be a waiver in your view? Probably not. But if you are — If the answer to that is not, then what is the difference between saying nothing, knowing that you have a defense, and saying we are not challenging, but we are not conceding? What is the difference? Well, by not conceding, that doesn't undercut the deliberateness of the waiver. It actually establishes it. It establishes that they know that there is a defense and they are not agreeing that the petition is timely, but they are deliberately choosing not to assert the statute of limitations. Now, let me just ask it one more way, and then I'll stop. Sorry. Back in the office, they are considering, in the State's office, they are considering what they are going to do. And they say, well, what we are going to do is we are not going to challenge it, but we are not going to concede it. And therefore, they say nothing. In the face of Rule 5's requirement, it could very well be a waiver. And I would cite the court to Hill v. New York, which also addresses one of the State's lawyers' points, which was a waiver for the State to waive a statute of limitations defense, its waiver has to be unequivocal and clear. I don't know if they are suggesting that there also has to be an advisement by the court. I don't think they are going that far. But the fact is, you look at the nature of the waiver or the right being waived, and this Court recognized in Hill v. New York and other cases that if the right being waived is, for example, the right to be tried in a timely fashion under IAD, it can be waived just by a lawyer accepting a date. And the statute of limitations issue here is a typical strategic decision. And when AEDPA brought this in, it didn't bring it in as it brought in Comedy. It is something to move the case along from the Federal point of view. And for this Court to adopt what the State is suggesting, and I'm going to go back to what the State is suggesting, will just take away all the efficiencies that that one year brought to bear. Thank you, counsel. Case is submitted.